UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-2314(DSD/AJB)

Isaac Ward,

        Plaintiff,

v.                                                              **ORDER**

Kevin Olson, Heather Robinson,
Thomas Williams, Kerri Nolden,
all in their individual and
official capacities as police
offers of the City of Bloomington,
Minnesota, and the City of
Bloomington,

        Defendants.

    William Z. Pentelovitch, Esq. and Maslon, Edelman, Borman and Brand, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402, counsel for plaintiff.

    Jason M. Hiveley, Esq. and Iverson Reuvers, LLC, 9321 Ensign Avenue South, Bloomington, MN 55438, counsel for defendants.

This matter is before the court upon the motion for summary judgment by defendants.[1] Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion in part.

---

[1] Defendants include the City of Bloomington and Bloomington Police Officers Kevin Olson, Heather Robinson, Thomas Williams and Kerri Nolden.

**BACKGROUND**

This excessive-force case arises out of the arrest of plaintiff Isaac Ward on December 3, 2009. Although he maintains a separate residence from his wife, Randee Ward, Isaac Ward frequently exercises her dog, Baby, at Dred Scott Park (Park) near her Bloomington, Minnesota condominium. Compl. ¶¶ 9-10. On November 4, 2009, Ward was exercising Baby off-leash at the Park, when Bloomington Animal Warden Jay Young approached and told him the "dog belongs on a leash at all times." I. Ward Dep. 19:23. Young issued a written warning to Randee Ward, as Baby's owner, for having the dog off leash. Young Dep. 12:1-2.

On December 3, 2009, Isaac Ward was again exercising Baby without a leash at the Park, while Randee Ward waited in the car. R. Ward Dep. 10:12-19. As Isaac Ward finished running Baby, Young arrived and pulled his vehicle behind the Wards' car. I. Ward. Dep. 32:3-9. Young approached and told Isaac Ward to "shut the car off and [to] give me your driver's license." Id. Ward responded with profanity, told Young to mail him a ticket and drove out of the parking lot. Id. The Wards drove to Randee Ward's condominium, and Young followed. Id. at 32:11-19. Upon arrival, Isaac Ward approached Young's vehicle, swore at him and threatened to "[s]natch him out of the car if he [kept] following." Id. at 32:16-33:8; 38:24-25. In response, Randee Ward told Isaac Ward to go into the condominium. R. Ward. Dep. 18:11-15. Young states

that Isaac Ward threatened to "go into the house ... get a gun" and kill him and his "friends in blue." Young Dep. 44:3-7.  Isaac Ward responds that he neither made contact with, nor threatened to kill, Young.  I. Ward Dep. 38:19-25, 92:6-13.

Thereafter, Randee Ward attempted to approach Young's vehicle to explain that Isaac Ward was emotional after recently returning from an out-of-state funeral.[2]  Young Dep. at 38:7-10.  Young placed his vehicle in reverse and backed away from Randee Ward's residence.  R. Ward Dep. 20:10-14.

Roughly twenty minutes later, several police cars and six officers congregated in a nearby parking lot.  Id. at 20:20-23.  Randee Ward approached the officers, whereupon she was asked whether any weapons were in the residence and if Isaac Ward had a history of violence.  Id. at 21:1-16.  She answered no to both questions.  Id.

Isaac Ward had a gross misdemeanor warrant for his arrest in Anoka County, and the officers approached the residence in a tactical manner due to his alleged threats of violence.  Olson Dep. 43:18-44:3; 45:11-16.  The officers rang the doorbell, and Isaac Ward buzzed the officers into the common area that the condominium shared with three other units.  I. Ward Dep. 41:24-42:12.  When

---

[2] It is unclear from the record whether Isaac Ward had already left the driveway and entered the condominium at this point in the altercation.  Compare R. Ward Dep. 18:11-15, with Young Dep. 42:4-43:22.

Ward stepped out of the condominium and into the building entryway, five officers were present: Thomas Williams, Kevin Olson, Kerri Nolden, Heather Robinson and Heather Potter (collectively, the officers).  Olson Dep. 42:3-9.

After asking Ward to identify himself, Williams informed Ward that he was under arrest and that he was to put his hands behind his back.  <u>Id.</u> at 51:6-7; I. Ward Dep. 43:10-16.  Ward alleges that he complied with the request, but that after he turned around, Olson punched him in the left eye.  I. Ward Dep. 44:1-4.  Olson does not dispute that he punched Ward, but explains that he struck Ward after observing him ball-up his fits and assume a fighting position.  Olson Dep. 60:6-24.  An unknown officer then struck Ward on the back of the neck, causing him to fall to the ground and pin his right arm underneath his body.  I. Ward. Dep. 50:1-21; 52:1-10.

A struggle ensued between Ward and the officers.  One officer pushed a knee into Ward's back while another applied pressure to his shoulders and neck.  <u>Id.</u> at 51:16-22; 53:10-18.  Olson alleges that he "yell[ed] at [Ward] to put his arms behind his back ..., [but h]e was forcefully pulling them in and laying on top of them." Olson Dep. 67:5-8.  Ward responds that he tried to comply with the officers' orders, but was unable to do so with his arms pinned beneath his body.  I. Ward Dep. 54:13-15.  Moreover, Ward claims that once he was able to get his left arm free, the officers were not interested in cuffing his hands.  <u>Id.</u> at 54:24-25.

4

Although Ward and the officers present differing factual accounts regarding the arrest, Williams admits to kicking Ward in the abdomen, see Williams Dep. 45:19-46:24, and Olson states that he twice used a taser in drive-stun mode.[3]  Olson Dep. 84:14-16; see also I. Ward. Dep. 55:17-25.  Olson gave no verbal warning prior to using the taser and explains that its use was in accordance with the City of Bloomington's use-of-force policy. Olson Dep. 84:3-87:23; 88:12-15.  Shortly after using the taser, the officers handcuffed Ward and took him to the Bloomington Police Department.  Compl. ¶ 39.

Subsequent to his arrest, Ward was given a medical screening, which noted a scraped left knee and swelling around the left eye and right hand.  Zebot Aff. Ex. 11.  Ward also had bruised ribs. I. Ward. Dep. 68:12-13.  Ward claims that as a result of the arrest, he experiences numbness in his left arm and weakness in his left wrist.  Segal Decl. Ex. A, at 5.  Moreover, Ward has back pain attributable to bulging discs and fusing and degeneration around his cervical spine.  Id.

On August 11, 2011, Ward filed suit under 42 U.S.C. § 1983, claiming that the officers and the City of Bloomington deprived him of his Fourth Amendment rights.  Ward also alleges common law

---

[3] A "[t]aser used in drive-stun mode directly contacts the subject without deployment of the darts.  In dart mode, a taser penetrates the skin and causes neuro-muscular interruption."  Imp v. Wallace, No. 10-509, 2011 WL 4396941, at *5 n.10 (D. Minn. Sept. 21, 2011) (citations omitted).

assault and battery and seeks a declaration that the City of Bloomington's use-of-force policy authorizes excessive force.

## DISCUSSION

### I. Summary Judgment Standard

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex v. Catrett, 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Excessive Force

"The doctrine of qualified immunity protects [law enforcement] officers from personal liability under § 1983 insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (alteration in original) (citation and internal quotation marks omitted). The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether defendants are entitled to qualified immunity, the court views the facts in the light most favorable to Ward and considers (1) whether the alleged facts demonstrate that the conduct of defendants violated a constitutional right and (2) whether the right claimed was clearly established at the time of the alleged injury. See Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). "If the answer to either question is no," then defendants are entitled to qualified immunity. Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010); see Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

**A.   Violation of Constitutional Right**

Section 1983 of Title 42 of the United States Code is "not itself a source of substantive rights." Albright v. Oliver, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted).  As a result, a plaintiff must "identify the specific constitutional right allegedly infringed." See id. (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  Here, Ward claims that defendants violated his Fourth Amendment right to be free from unreasonable seizure.

The Fourth Amendment right to be free from unreasonable seizure protects against the use of excessive force in the apprehension or detention of a person. See Graham, 490 U.S. at 395.  "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances."  Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citations and internal quotation marks omitted).  "[T]he right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396).

When evaluating the reasonableness of an officer's use of force, a court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97; see Brown, 574 F.3d at 496. In short, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Cook, 582 F.3d at 849 (quoting Graham, 490 U.S. at 396).

In the present action, there is a genuine dispute as to whether Ward (1) made a physical threat of violence against Young, (2) became physically combative by balling up his fist and assuming a fighting position prior to arrest and (3) refused to place his hands behind his back after being instructed to do so.

Viewing the facts in a light most favorable to Ward, a reasonable juror could find that Ward did not threaten Young with physical violence, engage in physically combative behavior or refuse to comply with the officers' orders. As a result, the jury could find that the amount and type of force was not objectively

9

reasonable. Therefore, material, disputed facts preclude finding that the officers did not violate Ward's constitutional rights.[4]

**B.   Clearly Established Constitutional Right**

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (citation omitted). In other words, in light of pre-existing law, the unlawfulness of the officers' action must be apparent. See Shannon v. Koehler, 616 F.3d 855, 864 (8th Cir. 2010).

"The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (citation omitted). The officers argue, however, that, under the state of the law at the time of Ward's arrest, "a reasonable officer could have believed that as long as he did not cause more than de minimis

---

[4] An officer may be liable for failing to intervene when another officer applies excessive force. Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981). "To establish such a claim ... a plaintiff must show, inter alia, that the officer observed or had reason to know that excessive force would be or was being used." Hicks v. Norwood, 640 F.3d 839, 843 (8th Cir. 2011) (citation and internal quotation marks omitted). Because all individual defendants were present during Ward's arrest, the court need not determine whether Olson and Williams were the only officers to engage in the use of excessive force. Olson Dep. 60:6-24 (punching Ward in face); Williams Dep. 45:19-46:24 (kicking Ward in abdomen).

injury to an arrestee, his actions would not run afoul of the Fourth Amendment." Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2011).

Here, Ward presents evidence of swelling around his left eye and right hand, a scraped right knee and chronic neck and back pain that his doctor attributes to injuries sustained during the arrest. See Segal Decl. Ex. A, at 5-7; id. Ex. B., at 2. As a result, even if more than de minimis injury is required to establish a Fourth Amendment violation,[5] a material fact dispute exists as to the severity of Ward's injuries. See, e.g., Small, 708 F.3d at 1005 (explaining that laceration treated at hospital without the need for stitches was more than de minimis injury); Copeland v. Locke, 613 F.3d 875, 881–82 (8th Cir. 2010) (finding lacerations from handcuffs and injury to the knee constitute more than de minimis injury). Therefore, the officers are not entitled to qualified immunity, and summary judgment is not warranted as to Ward's excessive-force claim.

**III. Monell**

"[A] municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom." Mettler

---

[5] Ward argues that a showing of more than de minimis injury is not required. Because the court finds that a material fact dispute exists as to the severity of Ward's injuries, the court need not address this argument.

11

v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (8th Cir. 1999)). To establish municipal liability under § 1983 a plaintiff must demonstrate that a municipal policy or custom was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694. The terms "policy" and "custom" are not interchangeable. See Mettler, 165 F.3d at 1204. "To establish the existence of a policy, [a plaintiff] must point to a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Jenkins v. Cnty. of Hennepin, Minn., 557 F.3d 628, 633 (8th Cir. 2009) (citation and internal quotation marks omitted).

Ward claims that the City of Bloomington is liable under Monell because its use-of-force policy permits officers to discharge tasers in drive-stun mode against passively-resisting subjects.[6]  Zebot Aff. Ex. 10, at B0188.  In Schumacher v. Halverson, 467 F. Supp. 2d 939 (D. Minn. 2006), however, the court explained that the use of a taser in drive-stun mode against a passively resisting subject was "reasonable and in accord with established constitutional principles." Id. at 952. In an attempt to distinguish Schumacher, Ward argues that the case is inapposite because the municipality in question had an unwritten custom

---

[6] The use-of-force policy defines passive resistance: "Fails to comply; uses no force or energy; indifferent to arrest or control." Zebot Aff. Ex. 10, at B0188.

12

regarding taser use, not a formal policy. Pl.'s Mem. Opp'n 26. Such an argument is unavailing, however, as this fact was not relevant to the determination in Schumacher that the officer did not use excessive force.[7] See id. at 951-52; see also Buckley v. Haddock, 292 F. App'x 791, 792-93, 796 (11th Cir. 2008) (unpublished) (finding no excessive force when officer used taser in drive-stun mode against a handcuffed subject that was lying on the ground, refusing to stand and crying). But see Mattos v. Agarano, 661 F.3d 433, 444-46 (9th Cir. 2011) (en banc) (determining that use of taser in drive-stun mode against motorist who refused to sign a speeding ticket was excessive force). Therefore, the court determines that the use of a taser in drive-stun mode against a passively-resistant subject does not result in per se excessive force, and summary judgment on the Monell claim is warranted.[8]

---

[7] Moreover, the cases cited by Ward are distinguishable. See Kirby v. Roth, No. 06-2168, 2010 WL 4668772, at *4 (W.D. Ark. Nov. 9, 2010) (tasering subject in dart mode); Willenbring v. City of Breezy Point, No. 08-4760, 2010 WL 3724361, at *2 (D. Minn. Sept. 16, 2010) (using pepper spray; tearing off pants; and tasering subject seven times, a majority of which occurred after the administration of handcuffs and ankle restraints); Mahamed v. Anderson, No. 07-4815, 2009 WL 873534, at *1 (D. Minn. Mar. 30, 2009) (deploying taser in dart mode - striking right hand and testicle of detainee - in a secure prison cell); Bailey v. Cnty. of Kittson, No. 07-1939, 2009 WL 294229, at *9 (D. Minn. Feb. 5, 2009) (shooting taser in dart mode from seven to eight feet away from detainee in secure room).

[8] As a result, the court declines to enter a declaratory judgment regarding the City of Bloomington's use-of-force policy.

13

**IV.  Intentional Torts**

Ward next alleges state law claims for assault and battery. Under Minnesota law, police officers may use reasonable force to execute their duties. See Minn. Stat. § 609.06, subdiv. (1)(d). Moreover, a plaintiff maintains the burden to establish a battery or assault based on the use of unreasonable force by a police officer. See Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984). As already explained, however, material fact disputes preclude summary judgment on Ward's excessive-force claim. For these same reasons, "the jury could find [the officers] liable for battery [or assault] under Minnesota state law." Mayard v. Siegfried, No. 08-5853, 2011 WL 579334, at *7 (D. Minn. Feb. 8, 2011).

In response, defendants argue that, even if material fact disputes would otherwise preclude summary judgment, then official immunity bars any claim for assault or battery. "Under Minnesota law, a public official is entitled to official immunity from state law claims when the official's duties require the exercise of discretion or judgment." Dorkman v. Cnty. of Hennepin, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001) (citation omitted). "Generally, police officers are classified as discretionary officers entitled to that immunity." Johnson v. Morris, 453 N.W.2d 31, 42 (Minn. 1990) (citations omitted). An exception to immunity exists, however, "if the officer acted maliciously or willfully." Id.

14

(citation omitted). "Malice in the context of official immunity means intentionally committing an act that the [officer] has reason to believe is legally prohibited." Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999) (citation omitted). The determination of whether an officer acted maliciously or willfully is usually a question of fact for the jury. See Elwood v. Rice Cnty., 423 N.W.2d 671, 677 (Minn. 1988).

As already explained with respect to Ward's excessive-force claim, a jury could conclude that the officers used excessive force during the December 3, 2009, arrest. In other words, a jury could find that the officers acted maliciously or without legal justification. Therefore, official immunity does not attach as a matter of law, and summary judgment as to Ward's state law claims is not warranted.[9]

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment [ECF No. 17] is granted in part, consistent with this order;

---

[9] Because fact issues preclude a finding that the officers had official immunity, the City of Bloomington may be liable for assault and battery under respondeat superior. See Yang v. Nutter, No. A07-232, 2008 WL 186182, at *3 (Minn. Ct. App. Jan. 22, 2008) (noting that municipalities are generally liable for employees torts unless official immunity attaches). Therefore, dismissal of the City of Bloomington from this action is improper.

2. Defendants' motion for summary judgment as to the § 1983 claim against the individual defendants is denied;

3. Defendants' motion for summary judgment as to the § 1983 claim against the City of Bloomington is granted; and

4. Defendants' motion for summary judgment as to the intentional torts is denied.

Dated:  April 8, 2013

                                        <u>s/David S. Doty</u>
                                        David S. Doty, Judge
                                        United States District Court